UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

LORI SCHMOLKE                                              NO. 07-10497

DEBTOR                                                     CHAPTER 7

**MEMORANDUM OPINION**

## I.      Introduction

Lori Schmolke filed a chapter 13 petition on April 17, 2007.  The court converted the

case to a chapter 7 liquidation on September 27, 2007, after a five-month period capped by a

lengthy and acrimonious trial on motions to dismiss or convert the case and lift the automatic

stay to resume proceedings in family court filed by the debtor's former husband, Robert H.

Schmolke.

Samera Abide became the debtor's chapter 7 trustee.  She has moved to compromise the

estate's claims against Robert Schmolke.

This memorandum opinion comprises the reasons the court approves the trustee's

compromise.

## II.     Procedural History

The trustee filed a Redacted Motion for Authority to Compromise With and to Sell and/or

Transfer Property of the Estate to Robert H. Schmolke, the Non-Filing Former Spouse (P-439)

on January 21, 2009.  The debtor objected to the proposed compromise (P-461).  In lieu of the

scheduled hearing,[1] the parties spent February 10 and part of February 11 negotiating.

Before the February 10 hearing, competing bids emerged for a 40-acre tract of

immovable property that is part of the debtor's estate.  Both as a result of the negotiations and

---

[1]  On the trustee's motion for special setting (P-433), the court set the hearing on trustee's compromise motion for
February 10 and 11, 2009.

also in response to the competing bids, Robert Schmolke increased his settlement offer.  The

increased offer led to the trustee's Amended Compromise Motion (P-463) filed February 11,

2009.[2]

   After settlement negotiations failed, the court commenced an evidentiary hearing

February 11 that, with interruptions, concluded February 13, 2009.  Several witnesses, including

Jack Dampf, the trustee's special counsel, testified at the hearing.  Mr. Dampf is a Baton Rouge

lawyer with more than 30 years experience representing well-heeled parties in divorce cases and

community property disputes.

## III.    The Proposed Compromise

   Principal features of the proposed community property partition settlement ("Proposed

Partition") are:

    a.    The estate will receive the former matrimonial domicile in Baton Rouge, subject to a mortgage debt of about $75,000 held by JPMorgan Chase Bank.  Proposed Partition ¶VIII(1);

    b.    The trustee will pay the mortgage debt and Robert Schmolke will cause JPMorgan Chase Bank to release a mortgage it holds against the property, which also secures separate debt of Robert Schmolke or debt of his professional corporation. Proposed Partition ¶VII;

    c.    The estate will receive $56,920.67 in proceeds from the sale of marina property and $120,000 in proceeds from an insurance claim for damage to a condominium. Proposed Partition ¶VIII(2-3);

    d.    The estate will receive a 2005 Mercedes G500 valued at about $50,000.  Proposed Partition ¶VIII(4);

    e.    The estate will receive a golf cart, 4-wheeler ATV and lawn tractor.  Proposed Partition ¶VIII(5-7);

---

[2]   The trustee supplemented the compromise motion with a copy of the proposed community property partition settlement on February 23, 2009.  See, Supplement to Amended Redacted Motion for Authority to Compromise With and to Sell and/or Transfer Property of the Estate to Robert H. Schmolke, the Non-filing Former Spouse (P-475). The agreement was further revised and the final version of the compromise was admitted into evidence as exhibit Trustee 15.

    f.      The estate will receive, with specified exceptions, movable property belonging to the former community and all movables that are Lori Schmolke's separate property or in her possession, including household furnishings and personal items. Proposed Partition ¶VIII(8-10);

    g.     Robert Schmolke will pay the estate $52,000.  Proposed Partition ¶X;

    h.     Robert Schmolke will receive all other property belonging to the former community including immovable property adjoining the residence and also an unimproved tract of about 40 acres.[3]  Proposed Partition ¶V; and

    i.      Robert Schmolke will release the estate from all claims to share in property of the former community, and for payment of community debts, and claims for reimbursement of separate funds used to pay community debts.  Proposed Partition ¶XIV, XV.[4]

## IV.   Debtor's Opposition to the Compromise[5]

Lori Schmolke opposes the settlement.  She contends that:

    a.     The trustee is conveying an unimproved 40-acre tract of land to Robert Schmolke for substantially less than its appraised value;

    b.     In evaluating the settlement the trustee gave Robert Schmolke too much credit for reimbursement claims, which the debtor alleges have limited factual or legal basis;

    c.     In deciding to settle, the trustee improperly relied on the conclusion that the family home was Robert Schmolke's separate property;

    d.     The settlement does not address Lori Schmolke's separate property allegedly in Robert's possession;

    e.     Lori Schmolke did not have "confirmation of certain information on the scope of assets and liabilities"; and

---

[3]  Counsel for Robert Schmolke and the trustee insisted at trial that the debtor and her former husband would negotiate between themselves the disposition of unlisted (and not described) movable property of sentimental value (or at least of value too insignificant to the estate to justify the administrative expense of litigating its disposition). The settlement thus does not encompass those items—whatever they may be.

[4]  This list necessarily is a summary.  The Proposed Partition sets out the terms of the compromise, and this opinion does not in any way alter the parties' agreement, except as specifically noted.

[5]  Generally, a chapter 7 debtor lacks standing to contest a settlement on behalf of the estate because the debtor will not receive any distribution from the estate.  Thus, the debtor has no pecuniary interest in the settlement.  *In re Rake*, 363 B.R. 146, 151 (Bankr. D. Idaho), citing *In re Keiffer-Mickes, Inc.*, 226 B.R. 204, 208 (8th Cir. B.A.P. 1998). However, the evidence here established that if the court approves the settlement, all creditors will be paid and the estate will have a surplus for distribution to the debtor.  *See* 11 U.S.C. §726(a)(6).  For this reason, Lori Schmolke does have a pecuniary interest and, as a result, standing to object to the compromise.

      f.      The trustee should have reserved objections to unsecured claims instead of waiving them.

Instead of settling, the debtor prefers to have the trustee litigate the community property partition and reimbursement claims.[6]

## V.    Applicable Law

Federal Rule of Bankruptcy Procedure 9019(a) provides that the bankruptcy court may approve a compromise on the trustee's motion after notice and a hearing.  A compromise in a bankruptcy should be approved only if the compromise is "fair and equitable and in the best interest of the estate."  *Matter of Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir. 1995), citing *Matter of Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

A court considering approval of a proposed settlement must evaluate:

      a.      The probability of success in the litigation, with due consideration for the uncertainty in fact and in law,

      b.      The complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and

      c.      All other factors bearing on the wisdom of the compromise.

*Jackson Brewing Co.*, 624 F.2d at 602.

"[T]he bankruptcy court has a duty to make an independent judgment as to the reasonableness of the proposed compromise," even though the trustee's opinion is entitled to great weight.  *In re Churchfield*, 277 B.R. 769, 773 (Bankr. E.D. Cal. 2002), citing *Protective Committee for Independent Stockholders of TMT Trailer Ferry Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 157, 20 L.Ed.2d 1 (1968).  *See also Matter of Cajun Electric Power Co-op, Inc.*, 119 F.3d 349, 356 (5th Cir. 1997) (citation omitted) ("The judge need only apprise himself of the relevant facts and law so that he can make an informed and intelligent decision . . . .")

---

[6] Debtor's Opposition (P-461), p. 13.

## VI.    Facts

Lori and Robert Schmolke have been engaged in litigation for several years growing out of the termination of their marriage.

The Schmolkes' divorce case started in the Family Court for East Baton Rouge Parish on January 11, 2006.[7]  Lori Schmolke brought the couple's fight into bankruptcy court when she filed chapter 13 on April 17, 2007, in advance of a Family Court hearing on a motion seeking to hold her in contempt for allegedly disobeying subpoenas and court orders.

Mrs. Schmolke never sought to initiate a partition of the former marital community in the Family Court.[8]  Instead, the day after she filed her chapter 13 petition, she filed in this court a complaint to partition the former community and for other relief.[9]

On September 26, 2007, Robert H. Schmolke obtained relief from the automatic stay to resume Family Court proceedings to partition the community assets.  The trustee has opted to settle the community property partition rather than incurring the cost and running the risk associated with trying it.

## VII.    Evidence Regarding Debtor's Objections to the Settlement

### a.    *Value of 40 Acres*

The debtor contends that by imputing a value of $600,000[10] to the property for settlement purposes, the trustee is receiving grossly inadequate value for the land.  The debtor argues that the trustee should not settle with Robert Schmolke but instead should continue to try to sell the property, which has been listed with a real estate agent only since November 2008.

---

[7]  "Schmolke v. Schmolke," No. 156,942 in the Family Court for the Parish of East Baton Rouge, State of Louisiana.

[8]  *See* transcript of September 26, 2007 oral findings of fact and conclusions of law (P-225).

[9]  *See* the prayer in plaintiff's complaint filed in Adv. No. 07-1040.

[10]  The trustee's original compromise proposed to sell the 40 acres to Robert Schmolke for $600,000.  Trustee's Motion to Sell (P-441).  The trustee withdrew her motion to sell the property during the hearing when the terms of the settlement changed as a result of competing bids for the property.

Robert Schmolke made acquiring the property a condition of the settlement.

The trustee listed the property for sale for $1.5 million.[11]  Terry Roccaforte, the listing agent, testified that she had received only five offers for the property: $550,000, $600,000, $675,000 and $680,000, the last two of which were submitted February 10, 2009, the date set for the hearing on the motion to compromise.  The trustee received a $702,000 offer at the hearing.  Ms. Roccaforte testified concerning another prospective purchaser's interest in the property for a residential development.  She said that prospect was rejected by three banks to which the purchaser had applied to finance the purchase and so that purchaser did not make an offer for the property.

Lori Schmolke called Tom Cook, an appraiser the court recognized as an expert, to testify concerning the value of the 40 acres of unimproved land in East Baton Rouge Parish.  Mr. Cook appraised the property at the trustee's request several months before the hearing, and opined that the property was worth $1.35 million as of October 5, 2008.  His appraisal was contingent on a marketing period of between six and twelve months.

On cross-examination by trustee's special counsel, Mr. Cook acknowledged that the most recent comparable sale he relied on in developing his appraisal took place in April 2008, and also conceded that it is more difficult to obtain financing for real estate projects now than it was a year ago.

Under other conditions, the debtor's argument would be appealing, even though the debtor produced no evidence of a prospective purchaser willing—or able—to pay more than the highest offer made to the trustee.  However, the nation's economy has experienced an upheaval

---

[11]  The listing agent, Terry Roccaforte, first recommended that the trustee list the property for between $765,000 and $800,000.  She recommended that listing price based on her review of transactions within the previous six months involving properties she believed were comparable.

and credit has become less readily available since the time Mr. Cook appraised the property. The ability of a prospective purchaser to obtain funding for the acquisition thus is far from certain.

Moreover, the debtor cannot pick and choose among the provisions of the proposed settlement. Although continued exposure of the 40-acre tract for sale *may* bring a better price, it is not without a cost to the estate, as there is a risk other assets will decrease in value while the immovable property awaits another buyer. Moreover, because transfer of the property to Robert Schmolke is a condition of the settlement, denial of approval will leave the estate without any of the benefits it receives through the compromise, including the release of the debtor's former husband's substantial reimbursement claims.

### b.    *Reimbursement Claims*

Jack Dampf, the trustee's special counsel, testified in detail concerning the trustee's investigation of the debtor's claims in the community property dispute and the method he and the trustee used to develop the settlement proposal. He investigated the assets and liabilities of the former community, including the assets to which Lori Schmolke and her counsel laid claim and the theories on which their claims rested. He met with counsel for both the debtor and her former husband, and with Robert Schmolke's certified public accountant. He also researched the basis for the components of Robert Schmolke's reimbursement claims against the community.[12]

Using information he obtained through this process as well as from other sources, the trustee's special counsel participated in assembling a list of the estate's assets and claims. The list, admitted into evidence as Exhibit Trustee 6, reflects a value for each community asset as well as Robert Schmolke's reimbursement claims. Mr. Dampf testified that he adjusted the

---

[12] Under Louisiana Civil Code articles 2365 and 2367, a spouse using separate property for the payment of community obligations or for the benefit of community property is entitled to be reimbursed one half the value of the separate property upon termination of the marital community.

amount of the reimbursement claims to reflect his own perception of their legal validity and prospects for success.

Finally, Dampf negotiated a "walk away" from some attorney fee claims. Under La. R.S. 9:2362.1, attorney fees incurred before divorce are community obligations. Robert Schmolke agreed to forego his claims for fees (totaling $102,398.01)[13] as part of the compromise.

### c.    Family Home as Robert Schmolke's Separate Property

The trustee offered the only evidence concerning ownership of the family home.

Robert Schmolke bought the house in February 1994 through Rhesco Holding Corporation, an entity he owned or controlled before he married Lori Schmolke.[14] Thus, the house originally was not property of the Schmolkes' marital community.

The owner re-sold the property to Robert Schmolke in 1995 (after his marriage to Lori), but the act of sale with assumption[15] did not recite Robert Schmolke's marital status and also incorrectly recited that he had been married only once. Based on this, the trustee contended that the home reasonably could be characterized as community property. Though that conclusion might seem to favor the estate, Mr. Dampf concluded that a ruling that the house was community property (and thus property of the bankruptcy estate under 11 U.S.C. §541(a)(2)) would have a negligible effect on the bankruptcy estate. This rests on the conclusion that if the house were community property, Robert Schmolke would be entitled to credit for separate funds he used to make the down payment to acquire the property.[16] In contrast, Dampf opined that if the court held that the house was Robert Schmolke's separate property, Lori Schmolke (and hence the

---

[13] Exhibit Trustee 2, p.15.

[14] February 25, 1994 Cash Sale from Frederick Graham and Glenda Graham to Rhesco Holding Corporation (Exhibit Trustee 7).

[15] February 22, 1995 Sale with Assumption of Mortgage from Rhesco Holding Corporation to Robert H. Schmolke (Exhibit Trustee 8).

[16] Louisiana Civil Code article 2367.

bankruptcy estate) would be entitled to reimbursement of principal payments the community had made on the debt secured by the house.

Mr. Dampf's analysis led him to conclude that the net monetary difference to the estate of characterizing the house as community or separate was modest. The debtor offered no evidence to contradict this analysis. Accordingly, the trustee's decision to settle claims regarding the home was not unreasonable in light of the evidence and the potential outcome.

### d.    *Lori Schmolke's Separate Property Allegedly Held by Robert Schmolke*

The debtor offered no evidence to support her allegations that Robert Schmolke retains specific articles of her separate property (which lack "significant monetary value, but … nevertheless are of significant sentimental and personal value….").[17]

Lori Schmolke's interest in property of the former community, like her separate property, is property of the bankruptcy estate, unless that property has been exempted. 11 U.S.C. §541(a)(2); §522(b)(3). However, the trustee's original motion at paragraph 6 specifically excluded from the settlement property the debtor had claimed as exempt without objection from the trustee.

Counsel for Robert Schmolke agreed at the hearing that the two parties would resolve issues relating to each other's remaining separate property, assuming the trustee has no interest in administering any of Lori Schmolke's separate property that remains in the bankruptcy estate. In any case, the debtor did not offer evidence of any specific separate property of the debtor that Robert Schmolke retains.

---

[17] Debtor's Opposition, p. 14.

e.      *Lack of Information Concerning Assets and Liabilities*

The debtor alleges that she was unable to obtain information necessary to evaluate the settlement and that she was not given access to Schmolke's professional law corporation's records "despite numerous requests…."[18]  She also complains that the trustee did not depose Robert Schmolke.

Jack Dampf testified in detail about the trustee's investigation of community assets and liabilities, including specifically claims associated with Robert Schmolke's law practice.  Dampf spent "probably 125 hours" doing due diligence in connection with the settlement, more than he normally would have spent in a Family Court case.  He testified that exhibit Trustee 6 identifies all significant community assets he was able to locate through due diligence.  Mr. Dampf also testified that he was not aware of any omitted community assets.  Steve Lemoine, Robert Schmolke's lawyer, also testified that the list was complete.  Robert H. Schmolke swore that Exhibit Trustee 6 was an accurate and truthful accounting of all assets of the former community.[19]  The evidence supports a finding that the trustee and her special counsel thoroughly investigated the assets and liabilities of the community, as well as alleged reimbursement claims, before agreeing to settle.

Dampf also sought to confirm Lori Schmolke's allegations about other community assets even though in some cases they led to "dead ends."  For example, the debtor contended that Robert Schmolke, a car buff, owned numerous vehicles that he no longer owned.  Dampf testified that many of the vehicles Lori Schmolke listed "didn't exist…."  In any case, the final list of vehicles on which the trustee relied in making the settlement offer was incorporated into Exhibit Trustee 6.

---

[18]  Debtor's Opposition, p. 16.

[19]  Verification Affidavit of Robert H. Schmolke (Exhibit Trustee 13).

More important, the debtor's failure to investigate the basis for the compromise is not a basis for denying the motion.  Lori Schmolke did not use any of the discovery methods available under the Federal Rules of Bankruptcy Procedure to compel discovery concerning the compromise from Robert Schmolke, his law corporation or any other person or entity the debtor contends had information that might bear on the wisdom of the compromise.  She cannot now claim that her failure to obtain that information is a reason for denying the motion.

The evidence also established that Lori Schmolke and her counsel[20] participated in selecting the date for the hearing on the trustee's motion.  The debtor did not move to continue the hearing to engage in discovery bearing on the compromise.  Despite this, to accommodate settlement negotiations the court adjourned February 10 to allow debtor's counsel to inspect information subject to terms the parties agreed on in open court.  The debtor's counsel reviewed documents that same evening with the trustee and Robert Schmolke's counsel.

### f.    *Reservation of Objections to Unsecured Claims*

The trustee's original motion at paragraph 40 provides for the payment of several claims. The Proposed Partition at paragraph IX recites that the bankruptcy estate will pay the enumerated claims.  However, both the motion and the Proposed Partition qualify the trustee's agreement by providing for payment of the claims "to the extent they are allowed by the bankruptcy court…."

Under Bankruptcy Code section 502(a), claims are "deemed allowed" unless a party in interest objects.  The motion and Proposed Partition do not limit or waive the trustee's or the debtor's ability to object to any claim (assuming the debtor has standing to object).

Accordingly, this objection is overruled.

---

[20]  The debtor has engaged several lawyers to serve as her counsel since she filed chapter 13.  Several different lawyers have represented her interests in family court since 2006.  Her bankruptcy co-counsel's firm filed a notice of appearance and request for notice in the chapter 13 case on June 25, 2008 (P-385) and since early August 2008 has been active in an associated adversary proceeding in which the trustee has sued to deny the debtor's discharge (Adv. No. 08-1064).

## VIII.  Other Evidence Supporting Approval of Compromise

The evidence supported a finding that the trustee and her special counsel investigated Lori Schmolke's claims regarding assets and debts even though the debtor's information in some cases was dated or could not be substantiated.  Mr. Dampf's testimony concerning the prospects of prevailing on Lori Schmolke's theories of the case was persuasive.  The trustee's assessment of the risks and costs of the litigation, and her balancing of factors in deciding to settle, was reasonable.

In contrast, Lori Schmolke did not testify concerning any of her allegations.  The debtor's failure to testify concerning her claims at the hearing, as well as her failure or refusal to cooperate with the trustee (discussed below) cast doubt on the debtor's credibility.

Finally, the trustee's special counsel testified concerning the cost of litigating the community property partition instead of settling.  Mr. Dampf testified that given the nature of the claims, the estate's cost to litigate the issue could reach $100,000.  That assessment is unrealistically low given the record of this bankruptcy case.

The case record contains ample evidence of the litigation costs Lori Schmolke has incurred since the divorce case started in 2006:

   a.    The debtor's schedules disclosed that she owed $100,000 in fees on a judgment in favor of her former family court counsel, Harry Ezim and Cynthia Reed.

   b.    Since she filed bankruptcy, the debtor has engaged three groups of lawyers: Pamela Magee, Bruce Kuehne and Marcus Foote, Omer F. Kuebel, III and C. Davin Boldissar, and a new Family Court lawyer who was present for, but did not participate in, the hearing on the trustee's motion to approve the compromise.[21]

   c.    The trustee and her counsel have been awarded $83,312 in fees as of the date of the evidentiary hearing.  The trustee also testified that her records reflect that she has another $40,000 of unbilled time.

---

[21]  After the evidentiary hearing but before this Memorandum Opinion was issued, counsel representing the debtor in connection with the trustee's motion to compromise moved to withdraw as debtor's counsel.

Mrs. Schmolke's actions and decisions have increased the expense of the dispute.  From the inception of her dealings with the bankruptcy court, Ms. Schmolke has flouted the bankruptcy process and unreasonably multiplied the proceedings to her own detriment, as well as to the cost of other parties in interest.  Continuing litigation in any court offers the prospect of only more fees and costs.[22]

Moreover, because the trustee now stands in Lori Schmolke's shoes, litigating in Family Court necessarily would require the debtor's cooperation.  That fact also supports the wisdom of the compromise.  The case record is littered with evidence of Ms. Schmolke's failure to cooperate with the trustee as 11 U.S.C. §521(a)(3) requires and to comply with Robert Schmolke's discovery requests:

a.    The debtor and the trustee entered into a consent order on November 13, 2007 (P-242) directing the debtor to turn over to the trustee jewelry worth about $200,000, and to maintain insurance on the jewelry as well as a 2004 Mercedes G500 and a 2005 Mercedes SL 55 AMG in her control.

b.    On the trustee's motion to compel and for sanctions (P-234), on December 3, 2007 the court ordered the debtor to turn over to the trustee the 2004 Mercedes SL 55 AMG (P-255).

c.    At a December 14, 2007 hearing, the court again ordered the debtor to show proof of satisfactory insurance coverage on the jewelry, turn the jewelry over to the trustee by December 18, 2007, provide proof of insurance on the Mercedes SL and turn that vehicle over to the trustee.  The court authorized the U.S. Marshal to seize the Mercedes if the debtor did not deliver it to the trustee by December 18, 2007.  The debtor also was sanctioned $500 for every day past December 18, 2007 that she did not comply with the turn over and insurance coverage order.

d.    The court held Lori Schmolke in contempt and sanctioned her $2500 for not complying with a subpoena *duces tecum* from counsel for Robert Schmolke (P-303).

---

[22]  Another advantage of the settlement is that upon its approval, Robert Schmolke's bankruptcy lawyers, Steffes Vingiello and McKenzie, will withdraw a pending motion for sanctions that seeks to hold the debtor liable for fees of $82,427.75 and costs of $5,702.22 (P-330).

    e.       The trustee was forced to obtain an order to allow her to inspect the family residence after the debtor refused to permit the trustee to enter the property (P-372).

    f.        A July 2, 2008 consent order required the debtor to turn over to the trustee certain pieces of jewelry.  This order included a sanction of $500.00 for every day after July 2, 2008 that the debtor failed to turn over the jewelry (P-386).

    g.       Another July 2, 2008 consent order required the debtor to allow the trustee, an inspector and her appraiser to inspect and appraise the residence and the 40-acre lot.  That order also included a sanction against the debtor of $500.00 for every day after July 16, 2008 that she did not give the trustee access to the property (P-387).

Lori Schmolke has shown her contempt for the bankruptcy process in other ways.  The trustee testified that the debtor failed to meet with her and Mr. Dampf after the court converted the case, and also to disclose that she possessed a substantial amount of valuable jewelry.[23]

Given this history, the trustee indeed would be imprudent to rely on Lori Schmolke's participation to prosecute the community property partition in Family Court.  Thus, that litigation is unlikely to produce a more favorable outcome for the estate than settlement on the terms the trustee and her special counsel have negotiated.[24]

The trustee's analysis of the proposed compromise took into account all the *Jackson Brewing Company* factors.  The settlement represents a thoughtful balancing of the uncertainties of the alternative of litigation, as well as its cost.  Settlement will assure payment of the creditors' claims and possibly preserve an opportunity for the debtor to receive funds from the bankruptcy—an unusual outcome in a chapter 7 liquidation.

---

[23] The trustee's extensive allegations of Mrs. Schmolke's failure to fulfill her obligations to the court and her creditors since filing bankruptcy form the basis for a complaint to deny the debtor's discharge in Adversary No. 08-1064.

[24] It is tempting to conclude that the debtor now wishes to revive the Family Court proceeding that she fled by filing chapter 13 because the judge who presided over her Family Court case has retired since she filed bankruptcy.

Finally, the compromise also eliminates the risk that assets may decline in value, as the evidence established already has happened to an annuity for which the estate is receiving credit.

For all these reasons, the proposed compromise is in the best interests of the creditors and the estate and is approved.

Baton Rouge, Louisiana, March 2, 2009.

<u>**s/ Douglas D. Dodd**</u>
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE